IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ROBERT LEE HARRIS,**

        **Plaintiff,**

v.                                        Civil Action No. 2:07cv58
                                               (Judge Maxwell)

**HARLEY G. LAPPIN, KAREN M. WHITE,
AL HAYNES, DUKE TERRELL, A.W. JETT,
DRENNAN, BOYLE, DR. MCCALLUM,
UNKNOWN PHYSICIAN'S ASST., LT. BILL
CAREY, JOHN DOE EMPLOYEES OF THE
FEDERAL BUREAU OF PRISONS,**

        **Defendants.**

## REPORT AND RECOMMENDATION

On July 31, 2007, the *pro se* plaintiff initiated this case by filing a civil rights complaint pursuant to <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971) and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, <u>et seq</u>. In the complaint, the plaintiff alleges that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by their deliberate indifference to his serious medical needs. In addition, the plaintiff asserts that the defendants negligently treated his hernia condition. This case is before the undersigned for a preliminary review and report and recommendation pursuant to LR PL P 83.01, <u>et</u> <u>seq</u>.

### I. The Complaint

On November 12, 1999, the plaintiff was diagnosed with having an indirect Ingruial Hernia by a physician's assistant at USP-Leavenworth. That diagnosis was confirmed by a physician on

December 3, 1999, and the plaintiff received a consultation with an outside surgeon. The outside surgeon recommended surgery, which the plaintiff received on October 23, 2002.

The plaintiff further alleges that immediately after he awoke from surgery, he was instructed to dress, placed in a wheelchair, and escorted from the hospital by three Bureau of Prisons ("BOP") corrections officers. Once at the front door of the hospital, the plaintiff asserts that he was instructed by a lieutenant that he had to walk to the waiting BOP institutional van. Moreover, the plaintiff asserts that although the van door was opened for him, he was otherwise required to climb into the van without assistance, while in blackbox handcuffs and shackles. The plaintiff further asserts that climbing into the van caused a burning pain.

After returning to USP-Leavenworth, the plaintiff asserts that he was required to climb the front steps of the facility and walk approximately a half mile to the hospital unit. At that unit, the plaintiff was then required to climb three more flights of stairs. During this entire time, the plaintiff asserts that he did not receive any help from the corrections officers, nor was he offered a wheelchair.

Once at the hospital, the plaintiff asserts that his medical papers were given to an unknown physician's assistant (PA), but that the PA did not examine him. Instead, the plaintiff asserts that he was told to proceed to his cell and return to medical the following morning to have his bandages changed. After his release from the hospital, the plaintiff asserts that he then had to walk back to his housing unit and climb another flight of stairs to get to his cell. The plaintiff asserts that he remained in his bed until the next morning when he reported to the hospital to have his bandages changed. The plaintiff again had to walk to the hospital unit without assistance of any kind.

When the plaintiff arrived at the hospital unit, he asserts that there was blood all over the

front of his pants. When he was examined by a PA, the plaintiff asserts that it was discovered that he was bleeding from the surgical site. The plaintiff asserts that the PA escorted him to an examination room where he was examined on a table. The PA allegedly determined that something was wrong with the surgical site and recommended that the plaintiff be sent back to the outside hospital. However, upon examination by Dr. McCullum, the PA was told to apply pressure to the surgical site to stop the bleeding and that the plaintiff would be all right. The PA did as instructed and also changed the plaintiff's bandages and wrapped an ACE bandage around the plaintiff to keep pressure on the site. The plaintiff was allegedly told to walk very slowly back to his cell.

During his subsequent healing period, the plaintiff asserts that he followed all of the doctor's instructions concerning walking, stretching and lifting, yet he continued to experience pain, muscle spasms, and weakness in and around the site of his surgery. The plaintiff also asserts that he was "told" that his weakness problems were due to scar tissue build-up and that he needed to do more stretching. The plaintiff asserts that no amount of stretching relieved the binding tight feeling and that he had to wrench himself straight after sitting for any period of time.

As time went on, the plaintiff asserts that it became difficult for him to walk and he started dragging his leg. The plaintiff further asserts that his leg eventually began locking up while he was walking and that he would have muscle spasms while he was laying down or standing. The plaintiff asserts that he complained of these problems to Dr. McCullum and was told that "the mesh" had "curled or loosened" which prevented his leg from flexing forward, causing the leg to drag. The plaintiff was therefore recommended for outside consultation and was examined by the same outside doctor he had previously seen. That doctor allegedly recommended reconstruction, repair or corrective surgery. The plaintiff was supposedly scheduled for such surgery, but was later told that

3

his surgery had been cancelled. The plaintiff was given no reason for the cancellation. The plaintiff asserts that his corrective surgery was later rescheduled, but then cancelled by A.W. Jett without explanation. When questioned, defendant Jett allegedly told the plaintiff that his surgery was cancelled due to budgetary constraints. The plaintiff asserts that he exhausted his administrative remedies as to the corrective surgery to no avail. Shortly thereafter, the plaintiff asserts that he was transferred to USP-Hazelton.

Upon his arrival at USP-Hazelton, the plaintiff asserts that the "doctors in West Virginia are not inclined to do corrective surgery and they are stating that the removal of a hernia plug that has migrated and is compressing my femoral nerve would be difficult at best." The plaintiff asserts that this failure to perform the corrective surgery has resulted in complications with his lower back and sciatic nerve on his left side. The plaintiff concedes that he has had "many different tests, and evaluations, but [has] not received corrective surgery." The plaintiff asserts that the problem only gets worse over time and that he is in constant pain.

The plaintiff asserts that he was recently examined by another doctor at USP-Hazelton who stated that the plaintiff now has a direct hernia in the same spot that the indirect hernia has meshed and migrated. The plaintiff asserts that this fact establishes that "there has been a problem [all] along that the medical staff had not addressed, or was negligent or had deliberate indifference" because he has not received the corrective surgery that was recommended.

## II. Claims of the Complaint

Based on the facts as outlined by the plaintiff, he makes the following claims:

(1) Did transportation officials demonstrate deliberate indifference toward the treatment of inmate returning from surgery from outside hospital?

4

(2) Did plaintiff receive medical neglect from BOP, Leavenworth medical officials upon his return from surgery from outside hospital?

As relief, the plaintiff seeks compensatory and punitive damages, as well as, injunctive relief against the defendants.

### III. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. 28 U.S.C. § 1915A. Pursuant to § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. 1915A(b).

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992).

### IV. Analysis

**A. Plaintiffs' Bivens Claims**

1. Personal Jurisdiction

---

[1] Id. at 327.

In order for a court to hear a case, the court must have both subject matter jurisdiction and personal jurisdiction. Pursuant to 28 U.S.C. §1331, "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Based on the allegations in the complaint, the court has subject matter jurisdiction because Hollis is alleging the violation of his Eighth Amendment rights and appears to be bringing a claim under the Federal Torts Claim Act.

For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir.2001). The West Virginia long-arm statute is contained in W.Va. Code §56-3-33(a).[2]

---

[2] This section provides as follows:
(a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

(1) Transacting any business in this state;
(2) Contracting to supply services or things in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury in this state by an act or omission outside this state if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state: Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods

With regard to personal jurisdiction, the Southern District of West Virginia has succinctly stated:

> "[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary . . . to go through the normal two-step formula for determining the existence of personal jurisdiction. Rather the statutory inquiry necessarily merges with the Constitutional inquiry." In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir.1997).
>
> To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interests here would not "offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Those minimum contacts necessary to confer jurisdiction are limited to those activities by which a person "purposely avails itself of the privilege of conducting activities within the forum state." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) see also In re Celotex, 124 F.3d at 628 (the minimum contacts must be "purposeful"). This occurs where the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(emphasis in original), or where the defendant's efforts are "purposefully directed" at the state. Id. at 476, 105 S.Ct. 2174.

Vass v. Volva Trucks North America, Inc., 304 F. Supp. 2d 851, 854 (S.D. W.Va. 2004).

Pursuant to 28 U.S.C. §1915, the Court can *sua sponte* raise the issue of personal jurisdiction. See Hall v. Herman, 896 F. Supp. 588, (N.D. W.Va. 1995).

With regard to the actions of the defendants at FCI-Leavenworth - - Duke Terrell, A.W. Jett, G. Drennan, Dr. McCallum, the unknown physician's assistant, Lt. Bill Carey and the two unknown employees of the Bureau of Prisons - - the plaintiff has failed to assert any contact by these

---

used or consumed or services rendered in this state;
(6) Having an interest in, using or possessing real property in this state; or
(7) Contracting to insure any person, property or risk located within this state at the time of contracting.
(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7), subsection (a) of this section may be asserted against him or her.

7

defendants with the state of West Virginia, much less the minimum contact necessary to satisfy the Due Process Clause. Thus, based on the complaint, the Court cannot exercise personal jurisdiction over these defendants as any action they took appears to have occurred solely in Kansas and not anywhere in West Virginia, and there is no indication that these defendants had any contact whatsoever with the State of West Virginia.

Consequently, the complaint against defendants Duke Terrell, A.W. Jett, G. Drennan, Dr. McCallum, the unknown physician's assistant, Lt. Bill Carey and the two unknown employees of the Bureau of Prisons should be dismissed under 28 U.S.C. §1915A(b)(1) and 1915(e)(2)(B)(i) for being frivolous because the court lacks personal jurisdiction over these defendants. See Harris v. United States, 2002 WL 824277 (N.D. TX 2002)(unpublished).

    2. Official Capacity/Supervisory Liability

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Thus, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S. 362 (1976).

However, in Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the plaintiff shows that:

"(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id.

However, a plaintiff cannot establish supervisory liability merely by showing that the subordinate was deliberately indifferent to his needs. Id. Instead, Plaintiff must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. Id. Moreover, in reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. Id.

Here, the plaintiff does not allege that defendants Lappin, White or Haynes was personally involved in any violation of his constitutional rights. Instead, the plaintiff merely names those defendants in their official capacities as the Director of the BOP, the Northeast Regional Director, and the Warden of USP-Hazelton, respectively. In addition, the plaintiff has failed to make the appropriate showing of supervisory liability. Therefore, the plaintiff's claims against defendants Lappin, White and Haynes should be dismissed under 28 U.S.C. §1915A(b)(1) and 1915(e)(2)(B)(i) for the failure to state a claim for which relief can be granted.[3]

---

[3] To the extent the plaintiff may be asserting that defendants Lappin, White, Haynes or Boyle were deliberately indifferent to his serious medical needs by denying his institutional grievances, that claim is also without merit as this is not the type of personal involvement required to state a Bivens claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003).

**B. Plaintiffs' FTCA Claims**

    1. Proper Party Respondent

Pursuant to 28 U.S.C. § 2679, a suit against the United States shall be the exclusive remedy for persons with claims for damages resulting from the actions of federal employees taken within the scope of their office or employment. Thus, the plaintiff has failed to name a proper party defendant for his claims under the FTCA.

    2. Venue

A tort claim against the United States may be prosecuted "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). In this case, the facts giving rise to the alleged cause of action occurred at USP-Leavenworth in Kansas. Moreover, the complaint does not assert where plaintiff resided prior to his incarceration and plaintiff's residence is not necessarily his place of incarceration.[4] Thus, where plaintiff resides is not altogether clear. Regardless, this Court has the authority under 28 U.S.C. §§ 1404(a) and 1406(a) to transfer this case to any other district or division where it might have been brought if doing so will be in the interests of justice.

Here, it appears that all of the events giving rise to the cause of action occurred in Kansas.

---

[4] There is currently a split among the circuits on the issue of whether an inmate's place of incarceration is his residence for purposes of venue. However, the weight of authority has found that a prisoner's place of incarceration is not his residence for purposes of venue . See Ellingburg v. Connett, 457 F.2d 240, 241 (5th Cir. 1971) (for purposes of venue, one does not change his residence to his place of incarceration); Urban Industries, Inc., of Kentucky v. Thevis, 670 F.2d 981, 986 (11th Cir. 1982) (finding that the prisoner retained his Georgia residence even though incarcerated in Indiana); Brimer v. Levi, 555 F.2d 656 (8th Cir. 1977) (finding venue improper in district where prisoner is confined because presence is involuntary and temporary); Flanagan v. Shively, 783 F.Supp. 922, 935 (M.D.Pa.) aff'd, 980 F.2d 722 (3d Cir. 1992) (inmate does not become resident of state by virtue of his incarceration); *but compare*, In re Pope, 580 F.2d 620 (D.C.Cir. 1978) (for general venue purposes a prisoner resides at his place of incarceration).

Moreover, most of the pertinent records and the majority of the witnesses are in Kansas. Thus, Kansas is the forum with the most meaningful connection to the plaintiff's claims and venue would be more appropriate in that court.

   3. Compliance With W.Va. Code §55-7B-6

To establish a medical negligence claim in West Virginia, the plaintiff must prove:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (W.Va. 2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's

11

familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va.2004).[5]

With regard to the appropriate standard of care, the plaintiff has completely failed to sustain his burden of proof. Plaintiff does not assert, much less establish, the standard of care for the diagnosis or treatment of a hernia.[6] Under the circumstances of this case, plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant's breach of the duty of care. Moreover, to the extent the plaintiff's medical negligence claims arise in West Virginia, there is nothing in the complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6.

## V. Recommendation

---

[5] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

[6] Plaintiff offers no pleadings, affidavits, or declarations from any medical professional that establishes the applicable community standards for the diagnosis or treatment of a hernia, and copies of plaintiff's medical records are insufficient to establish the standard of care.

For the reasons set forth in this Order, it is recommended that the plaintiff's complaint be **DISMISSED as frivolous** pursuant to 28 U.S.C. §1915A(b)(1) and 1915(e)(2)(B)(i) for the failure to state a claim upon which relief may be granted.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: May 28, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE